IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TANYCIA BAKER, | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:19-CV-3020-K-BH |
| v. | § | |
| | § | |
| UNIVERSITY OF TEXAS | § | |
| SOUTHWESTERN MEDICAL CENTER, | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, all of the plaintiff's claims, except for her retaliatiatory wrongful termination claims, should be **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B).

## I.  BACKGROUND

Tanycia Baker (Plaintiff) sues her former employer, University of Texas Southwestern Medical Center (Defendant), for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII), the American with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA), and the Family and Medical Act, 29 U.S.C. § 2601 *et seq.* (FMLA). (docs. 3 at 2; 10 at 3-11.)[2]  She seeks damages, injunctive and/or equitable relief, reasonable attorney's fees, and costs of suit. (doc. 3 at 8.)

Plaintiff began working for Defendant as a supervisor on August 20, 2018. (*Id.* at 2.)  She claims she "became very ill due to undue stress" from her manager (Manager) and had to miss several days of work for medical appointments. (*Id.*)  Manager made it "extremely difficult" for her to get her paid time off (PTO) requests approved by denying them and asking personal questions

---

[1]By *Special Order No. 3-251*, this *pro se* case was automatically referred for judicial screening.

[2]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

about her medical procedures. (*Id.* at 2-3.) She also tampered with Plaintiff's time sheets by deleting previously-approved time for medical leave, which reduced her paycheck. (*Id.* at 3.) After she complained to upper management about Manager, her 90-day review and performance appraisal was "negatively impacted." (*Id.*) On January 9, 2019, Plaintiff was placed on a 30-day performance improvement plan, which she completed with "no further write ups nor issues." (*Id.*)

The hostile work environment and undue stress caused by Manager made Plaintiff very ill, and she was "forced to go out on approved Medical Leave" from February 25, 2019, through April 13, 2019, "pending [her] doctor's release." (*Id.*) Her doctor extended her leave through May 6, 2019, but when she contacted Manager and human resources (HR) about the extension, she was threatened with termination. (*Id.*) When she returned to work on April 23, 2019, Manager "made the work load extremely unbearable as a result of being out on leave," and treated her unfairly. (*Id.*) Manager insulted Plaintiff during meetings, consistently screamed at her in front of the team she supervised, and refused to provide backup support. (*Id.*)

In June 2019, Plaintiff complained about Manager's conduct to HR and upper management, but she was advised that "this is how it is [with] her" and that Plaintiff needed to "watch [her] back." (*Id.*) She filed additional grievances about Manager with HR, but was told for months that they were still investigating her complaints. (*Id.*) She eventually attended a mediation with Manager and HR, where she requested to be transferred to a different department, but her request was denied, and she was told that she had to continue working under Manager. (*Id.* at 3-4.)

Plaintiff's health "continued to decline", and she "was forced to open FMLA intermittence leave" to attend follow-up medical appointments. (*Id.* at 4.) She was approved to miss up to three days a month for "flair ups and medical appointments" from July 1, 2019, to November 24, 2019.

(*Id.*)  When she used the approved leave, however, Manager "made it very difficult" for her, as she was required to catch up the "extremely heavy" work load with no backup assistance, even though other supervisors "had backups to cover them if they were out." (*Id.*)  At some point, Manager suspended her for eight days to search her computer for unfavorable performance-related information, and to "[a]lter accounts and falsify documentation to end [her] employment." (*Id.*)

From August 28, 2019 to September 3, 2019, Plaintiff was placed off work by her doctor with the understanding that "time work off due to FMLA would not be counted against [her]." (*Id.* at 5.)  While she was out, Manager purposely increased the work load for her team, making it impossible for it to "make production." (*Id.* at 5-6.)  Manager would then "belittle" her for not training her staff properly, and she wrote her up for failing to meet monthly production goals. (*Id.* at 6.)  On September 5, 2019, Plaintiff interviewed for an internal position, but Manager scheduled a meeting at the same time in an attempt to prevent her from leaving her control. (*Id.* at 5.)

On September 9, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging discrimination based on race, color, disability, and retaliation from November 1, 2018 to September 6, 2019 (First Charge). (*Id.* at 9.)  She claimed that she was discriminated against based on race because she was "subjected to harassment and a hostile work environment"; on disability because "management interfered with [her] FMLA"; and on color because she "was treated differently than" others of a different color.  (*Id.*)  She also claimed that she was placed on paid suspension in retaliation for "speaking out about the harassment towards" her. (*Id.*)

On September 20, 2019, Plaintiff was terminated and escorted off the premises by campus police. (*Id.* at 7.)  Manager told her that she was "terminated for failure to maintain satisfactory work

performance standards and failure to maintain suitable and acceptable standards of conduct due to insubordination." (*Id.* at 12.)  On September 23, 2019, Plaintiff filed a second EEOC charge (Second Charge), alleging that she was terminated in retaliation "for filing a charge with the EEOC on September 9, 2019." (*Id.* at 12.)  The EEOC dismissed the Second Charge and issued a right to sue letter that same day. (doc. 12 at 4-6.)  On December 20, 2019, Plaintiff filed this *pro se* action. (*See* doc. 3.)  No process has been issued.

## II.  PRELIMINARY SCREENING

Because Plaintiff has been granted permission to proceed *in forma pauperis*, her complaint is subject to preliminary screening under 28 U.S.C. § 1915(e)(2).  It provides for *sua sponte* dismissal if the Court finds the complaint "frivolous or malicious" or if it "fails to state a claim upon which relief may be granted." *Id.* § 1915(e)(2).  A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327-28.  Courts follow the same analysis in determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) as when ruling on a motion to dismiss under Rule 12(b)(6). *See Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (per curiam).  A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.  ADMINISTRATIVE EXHAUSTION

Plaintiff asserts that she was subjected to discrimination, a "retaliatory hostile work environment," and wrongful termination in violation of Title VII and the ADA. (docs. 3 at 2; 10 at

3-8.)[3]

Title VII of the Civil Rights Act prohibits discrimination against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. The ADA prohibits employers from discriminating against a qualified employee on the basis of disability. 42 U.S.C. § 12112(a). Before an individual may pursue Title VII and ADA claims in federal court, she must timely exhaust her available administrative remedies. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). This typically means that the complainant must file a charge with the EEOC and receive a "right to sue" letter before filing suit. *See* 42 U.S.C. § 2000e-5(e)(1); *Edelman v. Lynchburg College*, 535 U.S. 106, 109 n.1 (2002); *see also Shabazz v. Texas Youth Comm'n*, 300 F. Supp.2d 467, 470 (N.D. Tex. 2003) ("The issuance of a right-to-sue notice confirms that all administrative remedies have been exhausted and that the alleged aggrieved party may initiate judicial proceedings."). If the individual files a charge with the EEOC, the scope of her subsequent judicial complaint is limited to the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge." *Sanchez v. Standard Brands Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). This reasonable expectation rule requires that the allegations in a subsequent judicial complaint be "like or related to" allegations made in the EEOC charge. *See Vuyanich v. Republic Nat'l Bank of Dallas*, 723 F.2d 1195, 1201 (5th Cir. 1984).

Here, Plaintiff attached a copy of both EEOC charges to her complaint. (doc. 3 at 9-14.) The First Charge alleged discrimination and retaliation in violation of Title VII and the ADA. (*Id.* at 10.) It claimed that from between November 1, 2018 and September 6, 2019, Plaintiff was discriminated

---

[3]Plaintiff's answers to a magistrate judge's questionnaire constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

on the basis of her race, her disability, and her skin color, and that she was retaliated against when placed on paid suspension after speaking out about the harassment. (*Id.* at 9.)  The Second Charge alleged that Defendant terminated her on September 20, 2019, in retaliation for filing the First Charge in violation of Title VII and the ADA. (*Id.* at 12.) While Plaintiff provides the right to sue letter for the Second Charge, she does not allege that the EEOC issued a right to sue letter for the First Charge, or that she received such a letter. (doc. 12 at 4-6.)  On two occasions, she was specifically ordered to provide a copy of the EEOC decision on her initial charges of discrimination (docs. 9 at 2; 11 at 2), but she only provided the right to sue letter for the Second Charge (doc. 12 at 1, 4-6).  As discussed, the scope of the judicial complaint is limited to "the discrimination stated in the charge itself or developed in the course of a reasonable [EEOC] investigation of that charge." *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 712 (5th Cir. 1994) (citation omitted).  Plaintiff cannot rely on the right to sue letter based on the Second Charge to circumvent the exhaustion requirements of Title VII and the ADA with respect to the claims based on the First Charge. *See Cutrer v. Tarrant Cnty. Workforce Dev. Bd.*, No. 4:18-CV-00159-O, 2020 WL 5878458, at *7 n.7 (N.D. Tex. Oct. 2, 2020) (rejecting argument that exhausting administrative remedies as to the second charge satisfied the exhaustion requirement for the ADA claim based on the unexhausted first charge).

Because Plaintiff has failed to allege sufficiently that she has exhausted all administrative remedies regarding the First Charge, her discrimination and retaliation claims based on that charge should be dismissed without prejudice.[4] *See Hoffman*, 596 F.2d at 685 ("A judicial complaint that

---

[4]"When a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies." *Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 n.5 (5th Cir. 2004) (citing *Taylor v. United States Treasury Dep't*, 127 F.3d 470, 478 (5th Cir. 1997)).

fails to allege exhaustion of administrative remedies ... is properly subject to dismissal."); *Shabazz*, 300 F. Supp.2d at 471 (dismissing Title VII claim without prejudice where pro se plaintiff alleged that he filed a charge but failed to allege that a right to sue letter was issued or received); *Carr v. United Reg'l Health Care Sys., Inc.*, No. 4:06-CV-194-A, 2006 WL 2370670, at *2 (N.D. Tex. Aug. 16, 2006) (dismissing ADA claims for failure to allege exhaustion).

## IV.  TITLE VII AND ADA RETALIATION

Plaintiff asserts that Defendant terminated her employment as retaliation for filing an EEOC charge in violation of Title VII and the ADA. (docs. 3 at 2; 10 at 7-8.)

Title VII and the ADA make it unlawful for employers to retaliate against an individual because she has opposed any practice made an unlawful employment practice by the relevant statutes, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the relevant statute. *See* 42 U.S.C. § 2000e–3(a); 42 U.S.C. § 12203(a).  Retaliation claims under both Title VII and the ADA are analyzed under the familiar burden-shifting framework outlined in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (Title VII); *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (ADA).  A plaintiff establishes a prima facie case of retaliation by showing that: (1) she engaged in activity protected by Title VII or the ADA; (2) an adverse employment action occurred; and (3) there was a causal connection between the protected activity and the adverse action. *See id.*[5]

The causation requirement may be satisfied by showing "close timing between an

---

[5]Although a plaintiff is not required to plead the prima facie case of retaliation, she must plead sufficient facts on all of "the ultimate elements" of a retaliation claim to make her case plausible. *See Jenkins v. State Workforce Comm'n*, 713 F. App'x 242, 245 (5th Cir. 2017) (citing *Chhim v. Univ. of Texas*, 836 F.3d 467, 470 (5th Cir. 2016) (explaining that the prima facie elements for retaliation are helpful in analyzing the sufficiency of the complaint)).

employee's protected activity and an adverse action against [her]." *Garcia v. Professional Contract Serv., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019).  To establish causation by timing alone, the protected activity and the adverse employment action occur "very close" in time. *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020); *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'.") (citations omitted).  The Fifth Circuit has found that gaps of two months sufficiently close to satisfy the prima facie case of causation. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948-49 & n.39 (5th Cir. 2015) (citing cases).

Plaintiff's factual allegations are sufficient to survive judicial screening.  She alleges that she filed a charge of discrimination with the EEOC on September 9, 2019, that she was terminated by Defendant on September 20, 2019, and that her termination was in retaliation for filing the EEOC charge. (docs. 3 at 7, 12; 10 at 7.)  The filing of a charge of discrimination with the EEOC qualifies as a protected activity, and the termination of employment amounts to an adverse employment action. *See Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995) (explaining that "there can be no question that [the employee's] retaliation claims satisfy the first element of the analysis, filing an administrative complaint is clearly protected activity"); *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) ("It is clear that an adverse employment action occurred here—[plaintiff] was fired.").  Additionally, the two-week gap between the filing of the First Charge and her terminatation falls within the time period considered "very close" to establish causation by timing alone. *See Brown*, 969 F.3d at 578 (finding seven-week gap between protected activity and

adverse action was sufficient to establish causation based on timing alone); *Richardson v. Prairie Opportunity, Inc.*, 470 F. App'x 282, 286-87 (5th Cir. 2012) (finding seven-week gap acceptable); *Tanner v. LSU Fireman Training Program*, 254 F.3d 1082 (5th Cir. 2001) (finding casual connection demonstrated when after protected activity, "investigation of [appellant's] personnel file began within a month, and she was fired a little over a month later"). Accepting Plaintiff's allegations as true, and viewing them in the light most favorable to her as required by the standard of review, her retaliation claims under Title VII and the ADA based on wrongful termination survive screening.

## V. FMLA VIOLATIONS

Plaintiff alleges that Defendant violated the FMLA, and she appears to assert interference and retaliation claims under that statute. (doc. 10 at 9-11.)

The FMLA requires covered employers to provide up to twelve weeks of unpaid leave to any eligible employee who suffers from a serious health condition that makes her unable to perform the functions of her position. 29 U.S.C. § 2612(a)(1)(D). After a qualifying absence, the employee is entitled to immediate restoration to the position she occupied prior to her leave or its equivalent. *Id.* § 2614(a)(1). "The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of an employee's right to take FMLA leave." *Lanier v. Univ. of Texas Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013) (citing *id.*). To establish a prima facie interference claim under the FMLA, a plaintiff must allege facts sufficient to show that (1) she was an eligible employee, (2) her employer[6] was subject to the requirements of the FMLA, (3) she was

---

[6]Under the FMLA, an "employer" is "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i).

entitled to leave, (4) she gave proper notice of her intention to take leave, and (5) her employer

denied her the FMLA benefits to which she was entitled. *Caldwell v. KHOU-TV*, 850 F.3d 237, 245

(5th Cir. 2017). To qualify as an "eligible employee" under the FMLA, an employee must have

been employed "for at least 12 months by the employer" and worked "for at least 1,250 hours of

service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).[7] "A

prima facie case of interference under the FMLA therefore requires that the plaintiff allege that [s]he

was an eligible employee entitled to leave under that statute." *Boone v. G4S Secure Sols. USA Inc.*,

No. 2:21-CV-03709, 2022 WL 2162499, at *2 (W.D. La. June 15, 2022).

The FMLA also prohibits discrimination and retaliation against an employee for her exercise

of FMLA rights under its proscriptive provision. *See* 29 U.S.C. § 2615(a)(2); *Mauder v. Metro.*

*Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006). "To state a prima facie claim

for discrimination or retaliation under the FMLA, the plaintiff must allege that '(1) [s]he is protected

under the FMLA; (2) [s]he suffered an adverse employment decision; and either (3a) that the

plaintiff was treated less favorably than an employee who had not requested leave under the FMLA;

or (3b) the adverse decision was made because of the plaintiff's request for leave.'" *Hester v.*

*Bell-Textron, Inc.*, 11 F.4th 301, 305 (5th Cir. 2021) (quoting *Bocalbos v. Nat'l W. Life Ins. Co.*, 162

F.3d 379, 383 (5th Cir. 1998)). "The plaintiff is not protected under the FMLA if [s]he was not an

eligible employee entitled to FMLA leave at the time leave was requested or at the time requested

---

[7]"The FMLA excludes from 'eligible employee' status 'any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50.'" *Devlin v. Noble Anesthesia Partners, PLLC*, No. 3:20-CV-3066-G, 2021 WL 1597758, at *5 (N.D. Tex. Apr. 22, 2021) (quoting 29 U.S.C. § 2611(2)(B)(ii)). "In other words, to be entitled to FMLA leave, an employee must work for a company with at least 50 employees within 75 miles of [her] worksite." *Oden v. WellFirst Techs., Inc.*, No. 2:20-CV-00034, 2021 WL 4391716, at *5 (S.D. Tex. Apr. 9, 2021).

leave would have been taken." *Olivarez v. T-Mobile USA Inc.*, No. CV H-19-4452, 2020 WL 5269754, at *2 (S.D. Tex. June 9, 2020), *aff'd by* 2021 WL 1945680 (5th Cir. May 14, 2021) (citing *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 401 n.7 (5th Cir. 2012)).

Here, Plaintiff alleges that from between April through September 2019, her health declined and she was "force[d] to open FMLA intermittence leave" to attend medical appointments, but Manager denied her PTO requests to go to those appointments, tampered with her pay by deleting or not counting her time for approved medical leave, threatened to fire her if she did not return to work before she was released from medical leave, and increased her work load when she returned from leave. (doc. 10 at 9-11.)  She alleges that after speaking with upper management about Manager's actions, her 90-day review and performance appraisal was "negatively impacted," and she was the only supervisor who did not get a raise. (*Id.* at 10-11.)  She also alleges that she was terminated in retaliation for "speaking up," "being ill," and "using FMLA." (*Id.* at 7.)

Plaintiff has not pleaded sufficient facts to state a plausible claim for relief under the FMLA. Notably, she fails to sufficiently allege that she was an eligible employee entitled to FMLA leave, or that Defendant was an employer subject to the FMLA. *See Caldwell*, 850 F.3d at 245.  Although she was employed by Defendant for approximately 13 months, she does not "allege facts to show that she worked the requisite number of hours to be eligible for FMLA leave." *Wright v. Arlington Indep. Sch. Dist.*, 834 F. App'x 897, 903-04 (5th Cir. 2020) (concluding that plaintiff did not state a prima facie FMLA interference claim because there were no allegations to make a plausible facial showing that she was eligible for FMLA leave).  She also fails to sufficiently alleged that she was protected under the FMLA. *See Bocalbos*, 162 F.3d at 383-84 (concluding that the first prima facie prong of an FMLA retaliation claim was not met where employee was not eligible for FMLA leave).

Because Plaintiff has failed to state a claim for interference or retaliation under the FMLA, her FMLA claims should be dismissed with prejudice. *See Olivarez*, 2020 WL 5269754, at *2 (dismissing FMLA claims for interference and retaliation because plaintiff failed to "sufficiently allege he was an eligible employee entitled to FMLA leave and further fail[ed] to sufficiently allege he was protected under the FMLA," as he did not "allege facts showing he worked at least 1,250 hours during the twelve-month period preceding the alleged initial request for leave").

## VI. RECOMMENDATION

The plaintiff's discrimination and retaliation claims alleged in her first charge of discrimination should be **DISMISSED without prejudice** for failure to exhaust administrative remedies, and her FMLA claims should be **DISMISSED with prejudice** for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B).  The plaintiff's retaliation claims based on wrongful termination alleged in her second charge should proceed.[8]

**SO RECOMMENDED** on this 22nd day of August, 2022.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[8]Because Plaintiff has now responded to two questionnaires to clarify her claims, she has had an opportunity to allege her best case, and further leave to amend is not necessary or warranted. *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1997) (court need not give leave to amend where the court finds that the plaintiff has alleged his or her best case); *see also Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (affirming dismissal with prejudice where the *pro se* plaintiff's response to the questionnaire showed that he had pleaded his best case).

12

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

13