IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TANYCIA BAKER, § | |
|     Plaintiff, § | |
| § | Civil Action No. 3:19-CV-3020-K-BH |
| v. § | |
| § | |
| UNIVERSITY OF TEXAS § | |
| SOUTHWESTERN MEDICAL CENTER, § | |
|     Defendant. § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, *Defendant's Motion to Dismiss*, filed September 29, 2022 (doc. 20), should be **GRANTED**, and the plaintiff's request to "reopen all claims," filed October 4, 2022 (doc. 24), should be **DENIED**.

**I. BACKGROUND**

Tanycia Baker (Plaintiff) sues her former employer, University of Texas Southwestern Medical Center (Defendant), for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII), the American with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA), and the Family and Medical Act, 29 U.S.C. § 2601 *et seq.* (FMLA). (docs. 3 at 2; 10 at 3-11.)[2] She seeks damages, injunctive and/or equitable relief, reasonable attorney's fees, and costs of suit. (doc. 3 at 8.)

Plaintiff began working for Defendant as a supervisor on August 20, 2018. (*Id.* at 2.) She claims she "became very ill due to undue stress" from her manager (Manager) and had to miss several days of work for medical appointments. (*Id.*) Manager made it "extremely difficult" for her

---

[1] By *Special Order No. 3-251*, this *pro se* case has been automatically referred for full case management.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

to get her paid time off (PTO) requests approved, denying them and asking personal questions about Plaintiff's medical procedures. (*Id.* at 2-3.) She also tampered with Plaintiff's time sheets by deleting previously-approved time for medical leave, which reduced her paycheck. (*Id.* at 3.) After she complained to upper management about Manager, her 90-day review and performance appraisal was "negatively impacted." (*Id.*) On January 9, 2019, Plaintiff was placed on a 30-day performance improvement plan, which she completed with "no further write ups nor issues." (*Id.*)

Plaintiff alleges that the hostile work environment and undue stress caused by Manager made her very ill, and she was "forced to go out on approved Medical Leave" from February 25, 2019 through April 13, 2019, "pending [her] doctor's release." (*Id.*) Her doctor extended her leave through May 6, 2019, but when she contacted Manager and human resources (HR) about the extension, she was threatened with termination. (*Id.*) When she returned to work on April 23, 2019, Manager "made the work load extremely unbearable as a result of being out on leave," and treated her unfairly. (*Id.*) Manager insulted Plaintiff during meetings, consistently screamed at her in front of the team she supervised, and refused to provide backup support. (*Id.*)

In June 2019, Plaintiff complained about Manager's conduct to HR and upper management, but she was advised that "this is how it is [with] her" and that she needed to "watch [her] back." (*Id.*) She filed additional grievances about Manager with HR, but was told for months that they were still investigating her complaints. (*Id.*) She eventually attended a mediation with Manager and HR, where she requested to be transferred to a different department, but her request was denied, and she was told that she had to continue working under Manager. (*Id.* at 3-4.)

Plaintiff's health "continued to decline," and she "was forced to open FMLA intermittence leave" to attend follow-up medical appointments. (*Id.* at 4.) She was approved to miss up to three

2

days a month for "flair ups and medical appointments" from July 1, 2019 to November 24, 2019. (*Id.*) When she used the approved leave, however, Manager "made it very difficult" for her, as she was required to catch up the "extremely heavy" work load with no backup assistance, even though other supervisors "had backups to cover them if they were out." (*Id.*) At some point, Manager suspended her for eight days to search her computer for unfavorable performance-related information, and to "[a]lter accounts and falsify documentation to end [her] employment." (*Id.*)

From August 28, 2019 to September 3, 2019, Plaintiff was placed off work by her doctor with the understanding that "time work off due to FMLA would not be counted against [her]." (*Id.* at 5.) While she was out, Manager purposely increased the work load for her team, making it impossible for it to "make production." (*Id.* at 5-6.) Manager would then "belittle" her for not training her staff properly, and she wrote her up for failing to meet monthly production goals. (*Id.* at 6.) On September 5, 2019, Plaintiff interviewed for an internal position, but Manager scheduled a meeting at the same time in an attempt to prevent her from leaving Manager's control. (*Id.* at 5.)

On September 9, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging discrimination based on race, color, disability, and retaliation from November 1, 2018 to September 6, 2019 (First Charge). (*Id.* at 9.) She claimed that she was discriminated against based on race because she was "subjected to harassment and a hostile work environment"; on disability because "management interfered with [her] FMLA"; and on color because she "was treated differently than" others of a different color. (*Id.*) She also claimed that she was placed on paid suspension in retaliation for "speaking out about the harassment." (*Id.*)

On September 20, 2019, Plaintiff was terminated and escorted off the premises by campus police. (*Id.* at 7.) Manager told her that she was "terminated for failure to maintain satisfactory work

3

performance standards and failure to maintain suitable and acceptable standards of conduct due to insubordination." (*Id.* at 12.) On September 23, 2019, Plaintiff filed a second EEOC charge (Second Charge), alleging that she was terminated in retaliation "for filing a charge with the EEOC on September 9, 2019." (*Id.* at 12.) The EEOC dismissed the Second Charge and issued a right to sue letter that same day. (doc. 12 at 4-6.)

On December 20, 2019, Plaintiff filed this *pro se* action, alleging unlawful discrimination, hostile work environment, and retaliation in violation of Title VII and the ADA, and interference and retaliation with self-care leave in violation of the FMLA. (*See* doc. 3.) She filed verified answers to two magistrate judge's questionnaires on July 29, 2022 and August 9, 2022. (*See* docs. 9; 11.) On August 22, 2022, it was recommended that all of her claims, except for the Title VII and ADA claims for retaliatory wrongful termination alleged in her Second Charge, be dismissed under 28 U.S.C. § 1915(e)(2)(B). (doc. 13.) Plaintiff did not object to the recommendation, and it was accepted on September 18, 2022. (doc. 18.)

On September 29, 2022, Defendant moved to dismiss the remaining claims for lack of subject matter jurisdiction and failure to state a claim. (doc. 20.) Plaintiff responded on October 4, 2022, and also moved to reopen the previously dismissed claims. (docs. 24, 25.) Defendant responded on October 17, 2022. (docs. 26, 27.)

## II.  RULE 12(b)(1)

Defendant moves to dismiss Plaintiff's ADA claim under Rule 12(b)(1) for lack of subject matter jurisdiction. (doc. 21 at 2.)

### A.  Legal Standard

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges

4

a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by the Constitution and statute, they lack the power to adjudicate claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.*

The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the

5

complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id.*

Here, Defendant relies solely on Plaintiff's complaint in support of its motion. The motion therefore presents a facial attack that does not require the resolution of factual matters outside the pleadings. *See Williamson*, 645 F.2d at 412-13.

### B. <u>Sovereign Immunity</u>

Defendant contends that Plaintiff's ADA claim is barred by Eleventh Amendment immunity. (doc. 21 at 2-4.)

"The Eleventh Amendment bars citizens of a state from suing their own state or another state in federal court unless the state has waived its sovereign immunity or Congress has expressly abrogated it." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (citations omitted). A state's sovereign immunity also "extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). The Fifth Circuit has held that Defendant is an arm of Texas and protected by the state's sovereign immunity. *Daniel v. Univ. of Texas Sw. Med. Ctr.*, 960 F.3d 253, 257 (5th Cir. 2020).

Title V of the ADA prohibits retaliation against an employee who opposes an "act or practice made unlawful" by the substantive provisions of the ADA, or who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the ADA. *See* 42 U.S.C. § 12203(a). "Title V itself does not abrogate a state's sovereign immunity. Instead, a plaintiff may bring a retaliation claim against a state entity only to the extent that the underlying claim of discrimination effectively abrogates sovereign immunity of the particular state." *Block v.*

6

*Texas Bd. of L. Examiners*, 952 F.3d 613, 619 (5th Cir. 2020) (quoting *Dottin v. Texas Dep't of Criminal Justice*, 627 F. App'x 397, 398 (5th Cir. 2015) (per curiam)). Title I of the ADA prohibits employers from discriminating against a qualified employee on the basis of disability. 42 U.S.C. § 12112(a). "Congress did not abrogate the states' sovereign immunity in enacting Title I of the ADA." *Perez*, 307 F.3d 318, 326 (5th Cir. 2002) (citing *Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001)). States therefore have sovereign immunity from a Title V retaliation claim based on violations of Title I. *See Block*, 952 F.3d at 619.

Here, Plaintiff brings a retaliation claim against Defendant under Title V of the ADA, alleging her termination was in retaliation for filing an EEOC charge about employment discrimination because of her disability. (doc. 3 at 2.) Because her retaliation claim is predicated on alleged violations of Title I, and claims for unlawful discrimination under Title I are barred by sovereign immunity, it is similarly barred. *See Block*, 952 F.3d at 619; *see, e.g., Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 598 n.3 (5th Cir. 2021) (holding that, like the underlying claim against state agency for employment discrimination under Title I, the Title V retaliation claim was similarly barred by sovereign immunity). Plaintiff has offered nothing to suggest that Texas has waived Defendant's sovereign immunity with regard to her ADA claim. *See Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 241 (5th Cir. 2005) ("Generally, the Court will find a waiver either if (1) the state voluntarily invokes federal court jurisdiction, or (2) the state makes a 'clear declaration' that it intends to submit itself to federal court jurisdiction."); *see also Sullivan*, 986 F.3d at 596 (finding plaintiff failed to showing waiver of sovereign immunity under the ADA). While Plaintiff generally claims that Defendant cannot claim immunity because there are exceptions to Eleventh Amendment immunity, she fails to explain how those exceptions overcome Defendant's sovereign immunity in

7

this case. (*See* doc. 25 at 3.) Accordingly, Plaintiff's ADA retaliation claim against Defendant should be dismissed without prejudice as barred by sovereign immunity. *See Daniel*, 960 F.3d at 259 (affirming dismissal for lack of subject matter jurisdiction because UTSMC had sovereign immunity from plaintiff's ADA discrimination and retaliation claims).[3]

### III.  RULE 12(b)(6)

Defendant moves to dismiss Plaintiff's Title VII retaliation claim for failure to state a claim for which relief may be granted under Rule 12(b)(6). (doc. 21 at 5.)

**A.     Legal Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must

---

[3] Because Plaintiff's ADA retaliation claim is subject to dismissal for lack of subject matter jurisdiction, it is unnecessary to reach Defendant's argument that she also failed to state a claim. (*See* doc. 21 at 8.)

provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss or in a response to a Rule 12(b)(6) motion to dismiss, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007); *Walch v. Adjutant General's Dept. of Tex.*, 533 F.3d 289, 293-94 (5th Cir. 2008). If "matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to

present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, the pleadings consist of Plaintiff's original complaint, her answers to both questionnaires,[4] and the attached copy of the First and Second Charges and right to sue letter. (docs. 3; 10; 12.) Accordingly, it is unnecessary to treat the motion to dismiss as a summary judgment motion. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins*, 224 F.3d at 498; *see also Hawkins v. AT&T*, No. 3:12-CV-1173-L, 2013 WL 4505154, at *3 (N.D. Tex. Aug. 23, 2013) ("Documents contained in a Title VII administrative record are public records for which the court can take judicial notice and consider in a motion to dismiss.").

**B.     Title VII Retaliation**

Defendant contends that Plaintiff has failed to allege facts to establish the causation element of her Title VII retaliation. (doc. 21 at 5-6.)

Title VII of the Civil Rights Act prohibits discrimination against "any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e. Title VII also makes it unlawful for employers to retaliate against an individual because she has opposed any practice made an unlawful employment practice by Title VII, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statute. *See id.* § 2000e–3(a).

Retaliation claims under Title VII that are based on circumstantial evidence are analyzed under the familiar burden-shifting framework outlined in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020). A plaintiff

---

[4] A plaintiff's answers to a magistrate judge's questionnaire constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

must first establish a prima facie case of retaliation by showing that: (1) she engaged in activity protected by Title VII; (2) a materially adverse employment action against her occurred; and (3) there was a causal link between her protected activity and the adverse action. *Wheat v. Florida Parish Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). Even though a plaintiff is not required to make out a prima facie case of retaliation at the pleading stage, she must "plead sufficient facts on all of the ultimate elements" of a retaliation claim to make her case plausible. *See Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019) ("At [the pleading stage] of the proceedings, a plaintiff need only plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss."); *Jenkins v. State Workforce Comm'n*, 713 F. App'x 242, 245 (5th Cir. 2017) (citing *Chhim v. Univ. of Texas*, 836 F.3d 467, 470 (5th Cir. 2016) (explaining that the prima facie elements for retaliation are helpful in analyzing the sufficiency of the complaint)); *Raj*, 714 F.3d at 331 ("[A] plaintiff need not make out a prima facie case ... to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim.").

Although the prima facie element of causation appears identical to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff, the standard for establishing a causal link at the prima facie case stage is much less stringent. *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 1001 (5th Cir. 2022) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). "At the prima facie case stage, a plaintiff can meet [the] burden of causation simply by showing close enough timing between [the] protected activity and [the] adverse employment action." *Brown*, 969 F.3d at 577 (cleaned up); *see Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to

11

establish a prima facie case uniformly hold that the temporal proximity must be 'very close'.") (citations omitted). The Fifth Circuit has found gaps of two months sufficiently close to satisfy the prima facie case of causation. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948-49 & n.39 (5th Cir. 2015) (citing cases). "However, even at the prima facie stage, temporal proximity can only establish a causal link when it is connected to the decision maker's knowledge of the protected activity." *Thompson v. Somervell Cnty., Tex.*, 431 F. App'x 338, 342 (5th Cir. 2011); *see Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) ("Although the plaintiff's burden at the prima facie stage is not onerous, the plaintiff must produce at least some evidence that the decisionmakers had knowledge of his protected activity."). This means that at the pleading stage, a plaintiff is "required to allege facts permitting at least an inference of her employer's knowledge of her protected conduct in order to establish the required causal link between her conduct and the alleged retaliation." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 434 (5th Cir. 2021) (citations omitted).

Here, Plaintiff alleges that she "filed a charge of discrimination with the EEOC 9/9/2019 and after [she] spoke up [she] was terminated by [Manager] [ ] for performance when [she] had never been formally written up." (doc. 3 at 7.) Plaintiff has pleaded sufficient facts on the first two elements of a retaliation case: the filing of a charge of discrimination with the EEOC qualifies as a protected activity, and the termination of employment amounts to an adverse employment action. *See Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995) (explaining that "there can be no question that [the employee's] retaliation claims satisfy the first element of the analysis, filing an administrative complaint is clearly protected activity"); *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) ("It is clear that an adverse employment action occurred here—[plaintiff] was

fired."). While the two-week interval between the filing of the First Charge and her termination falls well within the time period considered "very close" to establish causation by timing alone, there are no factual allegations to reasonably infer that Manager actually knew of Plaintiff's EEOC complaint when she terminated her. Even accepting her factual allegations as true and construing them in the light most favorable to her, Plaintiff has failed to plausibly allege a causal link between her EEOC complaint and her subsequent termination. *See Wright*, 990 F.3d at 434; *see, e.g., Johnson v. McDonald*, 623 F. App'x 701, 704 (5th Cir. 2015) (affirming dismissal of retaliation claim where facts alleged suggested decisionmaker was unaware of protected activity). "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999).

Because Plaintiff has not alleged facts giving rise to a reasonable inference that she meets the ultimate elements of a Title VII retaliation claim, her Title VII retaliation claim based on wrongful termination should be dismissed.

### IV. OPPORTUNITY TO AMEND

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); Sims, 2001 WL 627600, at *2. Leave to amend is not necessary, however, where the

plaintiff has already plead his best case. *See Wiggins v. La. State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citations omitted). A verified questionnaire response allows a plaintiff to plead his or her best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint.").

Here, Plaintiff has responded to two questionnaires allowing her to allege her best case. (*See* docs. 10, 12.) Further leave to amend is not warranted. *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (affirming dismissal with prejudice where the *pro se* plaintiff's response to the questionnaire showed that he had pleaded his best case); *see also Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("[P]laintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold.").

## V. MOTION FOR RECONSIDERATION

Plaintiff moves to reopen all her claims that failed to survive statutory judicial screening and were dismissed by the order dated September 9, 2022, essentially seeking reconsideration of that order. (*See* docs. 18, 24.)

As noted by the Fifth Circuit, "the Federal Rules of Civil Procedure do not provide for a motion for reconsideration." *Shepherd v. International Paper Co.*, 372 F.3d 326, 328 n. 1 (5th Cir. 2004); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990) (noting that the federal rules of procedure "do not recognize a 'motion for reconsideration' *in haec verba*"), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n. 14 (5th Cir. 1994).

14

Where a motion for reconsideration challenges a final judgment, it is treated either as a motion to alter or amend the judgment under Rule 59(e), or as a motion seeking relief from judgment under Rule 60(b). *Id.* Where a motion does not challenge a final judgment, it is considered under Rule 54(b). *See McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018) (citing *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)).

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Under Rule 54(b), "'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin*, 864 F.3d at 336 (quoting *Lavespere*, 910 F.2d at 185). The Fifth Circuit has specifically noted Rule 54(b)'s flexibility, which reflects courts' inherent power to provide relief from interlocutory orders and decisions " 'as justice requires.' " *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)); *Cabal v. Brennan*, 853 F.3d 763, 766 n. 3 (5th Cir. 2017).

Here, Plaintiff claims that "all documentation was provided initially . . . to the court," so her claims "should have never been dismissed." (doc. 24 at 1.) She alleges that "there wasn't just a right to sue letter giv[en]"; she had provided the Court with "all paperwork from the EEOC with the charges of discrimination." (*Id.*) As explained in the recommendation, Plaintiff's discrimination and retaliation claims based on the First Charge were subject to dismissal for failure to exhaust administrative remedies. (doc. 13 at 6.) Even though she was ordered on two separate occasions to state whether the EEOC issued a final decision on her charges of discrimination and when she

15

received the notice of right to sue and to provide a copy of the right to sue letter on her charges, she only provided the requested information with respect to her Second Charge. (*See* docs. 9, 11.) While she again attaches copies of the First and Second Charges, she still has not provided a copy of the right to sue letter on her First Charge or alleged facts that she exhausted administrative remedies with respect to that charge. (*See* doc. 24 at 2-7.)

Plaintiff also seeks reconsideration of the dismissal of her FMLA claims. (doc. 24 at 1.) For the first time, she alleges that she had more than 1,240 hours of "prior state service time" when she transferred to Defendant, and she includes a copy of an FMLA Designation Notice stating that it approved her for FMLA leave on August 23, 2019. (*Id.* at 1, 8-9.)  Her new allegations and attachment do not cure the pleading deficiencies with respect to her FMLA claims, however. The recommendation explained that her FLSA claims were subject to dismissal because she failed to allege facts showing that she was an eligible employee entitled to FMLA or that Defendant was subject to FMLA requirements. (doc. 13 at 11.) Even though she now alleges that she transferred to Defendant with more than 1,240 hours of "prior state service time," an employee must have worked for her employer for at least 1,250 hours during the preceding twelve-month period to be eligible for FMLA leave. *See* 29 U.S.C. § 2611(2)(A); *see also Wright v. Arlington Indep. Sch. Dist.*, 834 F. App'x 897, 903-04 (5th Cir. 2020) (concluding that plaintiff failed to state a valid FMLA claim as she alleged no facts "to show that she worked the requisite number of hours to be eligible for FMLA leave"). While Plaintiff's FMLA Designation Notice shows that it approved her for some FMLA leave, prior approval for FMLA leave without more does not create a plausible facial showing that she was eligible for FMLA leave and protected under the Act. *See Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383-84 (5th Cir. 1998) (concluding that first prima facie prong of an

16

FMLA retaliation claim was not met where ineligible employee received FMLA leave in error).[5]

Because Plaintiff has not shown that justice requires reconsideration of the dismissal of her retaliation and discrimination claims based on the First Charge or of her FMLA claims, her motion for reconsideration should be denied.

## VI.  RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED**, and Plaintiff's motion for reconsideration should be **DENIED**. Plaintiff's ADA retaliation claim should be **DISMISSED without prejudice** for lack of subject matter jurisdiction, and her Title VII retaliation should be **DISMISSED with prejudice** for failure to state a claim.

**SO RECOMMENDED** on this 2nd day of June, 2023.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[5] Even assuming that Plaintiff's new allegations are sufficient to a state a claim for relief under the prescriptive or proscriptive provisions of the FMLA, subject-matter jurisdiction over the claims would be lacking because they relate to self-care leave; as an arm of the State of Texas, Defendant has Eleventh Amendment immunity from claims based on the FLMA's self-care provision. *See Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 321 (5th Cir. 2008) (explaining that Congress did not abrogate states' sovereign immunity with respect to the FMLA's self-care provision); *see, e.g., Bryant v. Texas Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015) (holding that the district court did not have jurisdiction over plaintiff's interference or retaliation claims that fell under FMLA's self-care provision as the state agency employer enjoyed Eleventh Amendment from such claims).

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                                                    _____
                                                                                   IRMA CARRILLO RAMIREZ
                                                                       UNITED STATES MAGISTRATE JUDGE